ORIGINAL

FILED
JUN 2 0 2018
U.S. COURT OF
FEDERAL CLAIMS

# In the United States Court of Federal Claims

No. 17-1955C
(Filed: June 20, 2018)

| | | |
|---|---|---|
| ************************************ | * | Pro Se Plaintiff; In Forma Pauperis; RCFC |
| NAUSHEEN ZAINULABEDDIN, | * | 12(b)(1); Subject Matter Jurisdiction; |
| | * | RCFC 12(b)(6); Failure to State a Claim |
| Plaintiff, | * | Upon Which This Court Can Grant Relief; |
| | * | Proper Defendant; Regulatory Taking; |
| v. | * | Administrative Procedure Act; Section 504 |
| | * | of the Rehabilitation Act of 1973; Breach |
| THE UNITED STATES, | * | of Contract; RCFC 9(k); Collateral Attack |
| | * | Against the Decisions of Other Courts; |
| Defendant. | * | Authority to Grant Injunctive Relief; 28 |
| ************************************ | | U.S.C. § 1500 |

Nausheen Zainulabeddin, Tampa, FL, pro se.

Barbara E. Thomas, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Judge

In this case, plaintiff Nausheen Zainulabeddin, proceeding pro se, alleges that the University of South Florida ("USF") Morsani College of Medicine ("Morsani") discriminated against her while she was in attendance, the United States Department of Education's Office of Civil Rights ("OCR") violated the Administrative Procedure Act and breached a contract in failing to conduct a proper investigation into the alleged discrimination, and various federal courts improperly dismissed her appeals of the OCR's actions. Ms. Zainulabeddin seeks various forms of monetary and injunctive relief. Currently before the court is Ms. Zainulabeddin's motion to proceed in forma pauperis and defendant's motion to dismiss Ms. Zainulabeddin's complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which this court can grant relief. As explained below, although Ms. Zainulabeddin has met the requirements to proceed in forma pauperis, the court lacks jurisdiction to consider her claims. Therefore, the court grants both pending motions and dismisses the complaint.

## I. BACKGROUND

Ms. Zainulabeddin completed a master's degree at USF in medical sciences, with a concentration in anatomy, in 2009.[1] While in graduate school, she was informally diagnosed

---

[1] The facts discussed herein are taken from the complaint, the materials attached to the complaint, the parties' submissions, and matters of which the court may take judicial notice

with Attention Deficit Hyperactivity Disorder ("ADHD"). Her academic performance improved after she received a prescription for Adderall. Upon completion of her master's degree program, Ms. Zainulabeddin was admitted to Morsani. She began medical school in August 2009.

In March 2010, after experiencing academic difficulties, Ms. Zainulabeddin began taking antianxiety medication and asked Steven Specter, the Associate Dean for Student Affairs at Morsani, whether she should take a leave of absence to undergo further testing and evaluation to determine whether she suffered from a learning disability that was impacting her studies. Although the student handbook listed a leave of absence as an appropriate intervention in certain circumstances, Dr. Specter advised Ms. Zainulabeddin to do her best in attempting to finish the 2009-10 academic year. However, in the spring of 2010, she failed the Year 1 Comprehensive Exams. Morsani then advised Ms. Zainulabeddin that she would be required to repeat her first year of medical school and obtain a comprehensive assessment of her learning style, i.e., a neuropsychological evaluation paid for by the medical school, and would be placed on academic probation.

Ms. Zainulabeddin underwent the required neuropsychological evaluation in August and September 2010. She was orally advised that anxiety was the likely cause of her academic difficulties and that she should seek appropriate treatment. Accordingly, she did not seek further treatment at that time for ADHD. She did not receive a written copy of the final evaluation results, but met with Dr. Specter in October 2010. Dr. Specter, allegedly having mixed up Ms. Zainulabeddin's evaluation with that of another student, informed Ms. Zainulabeddin that her evaluation results did not indicate that she needed academic accommodations. After successfully completing her first-year curriculum during the 2010-2011 academic year as a repeating student, she was removed from academic probation.

Ms. Zainulabeddin failed one of her second-year courses in September 2011, but was able to remediate the course. In December 2011, she failed another course, and was dismissed from Morsani on January 5, 2012. On February 5, 2012, Ms. Zainulabeddin received a written copy of her neuropsychological evaluation for the first time, which indicated that she suffered from ADHD and anxiety and, accordingly, should qualify for reasonable academic accommodations. On February 21, 2012, Morsani reversed its dismissal but required Ms. Zainulabeddin to repeat her second year of medical school on academic probation. By that time, she had paid over $90,000 for six semesters of medical school by taking out student loans, but had only completed one year (2010-2011) successfully.

Believing that she had been forced to withdraw due to (1) exceptional circumstances beyond her control and (2) error on the part of Morsani, Ms. Zainulabeddin sought reimbursement of the tuition she had paid for the 2009-2010 and 2011-2012 academic years. Ms. Zainulabeddin contended that had she been treated medically for ADHD and received appropriate accommodations, she would have succeeded academically without having to repeat courses. She blamed Morsani for providing inaccurate information regarding the results of her

---

pursuant to Rule 201 of the Federal Rules of Evidence. The court accepts Ms. Zainulabeddin's allegations as true for purposes of resolving the instant motions.

neuropsychological evaluation, which she alleges prevented her from receiving proper treatment and academic accommodations. Although Ms. Zainulabeddin received a partial refund for the 2011-2012 academic year, the remainder of her tuition refund request was denied.

In accordance with the February 2012 readmission decision, Ms. Zainulabeddin re-enrolled as a second-year medical student on July 23, 2012, on academic probation status. During the 2012-2013 academic year, she received classroom and testing accommodations through the USF Students With Disabilities Services office. As a repeating student receiving accommodations, Ms. Zainulabeddin alleges that she was discriminated against by some of her professors by being held to higher academic standards than her fellow medical students. She was assigned failing grades in two courses on March 13, 2013. The following day, Morsani's Academic Performance Review Committee dismissed Ms. Zainulabeddin from the program. She alleges that had she not been on academic probation at the time, she would not have been subject to dismissal until failing an entire semester or year, rather than only two individual courses. She was allowed to remediate the two failed courses while appealing the dismissal. Her appeal was denied by the review committee on April 5, 2013, and by the dean of the medical school on May 28, 2013. In the interim, Ms. Zainulabeddin had successfully remediated the two courses she had failed, thus completing her second year of medical school.

Ms. Zainulabeddin's second tuition refund request for the full 2009-2010 and 2011-2012 academic years was denied on July 30, 2013. She later continued her medical studies at Atlantic University School of Medicine ("Atlantic"), a private medical school in Saint Lucia, as a rising third-year student.[2,3]

On March 20, 2014, Ms. Zainulabeddin filed a complaint with the OCR, alleging that she had been subject to discrimination throughout medical school on account of her disability. Her complaint was assigned case number 04-12-2321. The OCR dismissed her complaint as untimely on April 9, 2014.

In June 2014, having waited the required one-year interval following her dismissal, Ms. Zainulabeddin petitioned for readmission to Morsani. She contended that she had been inappropriately placed on academic probation, thus leading to her dismissal from the medical school without the opportunity to appeal the failing grades she had received. She also requested

---

[2] The record before the court contains scant information concerning Ms. Zainulabeddin's time at Atlantic, which is no longer accredited by the World Health Organization. However, such information is not necessary for resolving the pending motions.

[3] At the time she filed the instant complaint, Ms. Zainulabeddin was pursuing a Master of Business Administration degree at Davenport University, which she began at the same time she transferred to Atlantic. As an offshore medical school, Atlantic students are not eligible to receive federal student aid; Atlantic encouraged its students to simultaneously enroll at Davenport University (which participates in the federal student aid programs administered by the United States Department of Education) so they could access federal student loans to pay for living expenses while in medical school.

a tuition refund and that she be reinstated as a rising third-year medical student not on academic probation. As part of her petition, Ms. Zainulabeddin listed examples of prior cases where the OCR had found in the student's favor when proper accommodations had not been provided. After a committee met to consider her petition on June 25, 2014, her petition was denied on August 22, 2014.

One week later, on August 29, 2014, Ms. Zainulabeddin filed another OCR complaint, which was assigned case number 04-14-2487. She listed the same disability discrimination allegations set forth in her March 20, 2014 OCR complaint and added allegations of racial discrimination throughout medical school. She also alleged that Morsani's August 22, 2014 denial of her petition for readmission constituted disability discrimination because the medical school had held her past academic difficulties, which she attributed to her disability, against her. On September 25, 2014, the OCR agreed to investigate the issue of whether the August 22, 2014 denial was discriminatory. At the same time, however, the OCR dismissed the remaining allegations as either (1) duplicative of those set forth in her March 20, 2014 complaint or (2) untimely, explaining that Ms. Zainulabeddin's stated reasons for not filing her complaint earlier were insufficient to toll the filing deadline. On February 9, 2015, the OCR issued a decision indicating that there was insufficient evidence to find that Morsani discriminated against Ms. Zainulabeddin in denying her petition for readmission. The OCR observed that Ms. Zainulabeddin's academic performance in the 2012-2013 year alone—when she was receiving accommodations—subjected her to dismissal according Morsani's established policies and procedures. On April 14, 2015, Ms. Zainulabeddin appealed the OCR's finding of insufficient evidence of discrimination. Her appeal was denied by the OCR regional director on December 16, 2015, constituting the final agency action.

While awaiting the decision on her appeal of the OCR's February 9, 2015 decision, Ms. Zainulabeddin submitted, on May 12, 2015, a demand letter to Morsani for a tuition refund and reinstatement to the medical school. She did not receive a response.

On January 22, 2016, Ms. Zainulabeddin filed suit against USF in Florida state court, alleging generally that Morsani had discriminated against her because of her disability in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), codified as amended at 29 U.S.C. § 794. In addition to disability discrimination, she asserted counts for breach of fiduciary duty, negligent misrepresentation, breach of contract, and unjust enrichment. Specifically, she argued that because her academic difficulties stemmed from ADHD, placing her on academic probation, with its attendant stricter requirements, was improper. Had Morsani treated her fairly, she averred, she would have been able to receive proper treatment and academic accommodations beginning in her first year of medical school, would not have needed to repeat her first and second years of medical school, and never would have been placed on academic probation.

On March 17, 2016, USF removed the action to the United States District Court for the Middle District of Florida ("Florida federal district court"), invoking both federal question and diversity jurisdiction. USF noted that, at the time Ms. Zainulabeddin filed her complaint in state court, she resided in Illinois, and that USF was an instrumentality of the state of Florida. After

discovery, the Florida federal district court granted summary judgment in favor of USF on April 19, 2017. See generally Zainulabeddin v. Univ. of S. Fla. Bd. of Trs., No. 8:16-cv-637, 2017 WL 5202998 (M.D. Fla. Apr. 19, 2017). Shortly thereafter, Ms. Zainulabeddin filed a motion for reconsideration of the summary judgment ruling, in which she discussed the OCR's denial of her complaints, and a motion for recusal of the trial judge; both motions were denied. See generally Zainulabeddin v. Univ. of S. Fla. Bd. of Trs., No. 8:16-cv-637, 2017 WL 5202999 (M.D. Fla. May 3, 2017). As the prevailing party in the suit, USF was awarded the majority of its costs. See generally Zainulabeddin v. Univ. of S. Fla. Bd. of Trs., No. 8:16-cv-637, 2017 WL 2215675 (M.D. Fla. May 19, 2017).

Ms. Zainulabeddin sought appellate review of the Florida federal district court's decisions:

- On April 26, 2017, Ms. Zainulabeddin appealed the Florida federal district court's adverse summary judgment ruling to the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"), where it was assigned docket number 17-11888.

- After filing her motion for reconsideration at the Florida federal district court, Ms. Zainulabeddin sought to stay the motion pending the outcome of her April 26, 2017 appeal. Her motion to stay was denied as moot on May 4, 2017—the day after her motion for reconsideration was denied. Ms. Zainulabeddin appealed the denial of her motion to stay to the Eleventh Circuit on May 10, 2017, where it was assigned docket number 17-12134.[4]

- On May 22, 2017, Ms. Zainulabeddin appealed the Florida federal district court's summary judgment and reconsideration rulings to the Federal Circuit, where it was assigned docket number 2017-2083. She subsequently petitioned the Federal Circuit to review the OCR's final decision, assign that portion of her appeal a separate docket number, and transfer it to the Eleventh Circuit.

---

[4] The May 10, 2017 notice of appeal named the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), but it was transmitted instead to the Eleventh Circuit. The Eleventh Circuit denied Ms. Zainulabeddin's request to transfer the appeal to the Federal Circuit, emphasizing that the Federal Circuit would lack jurisdiction to consider her appeal. Zainulabeddin v. Univ. of S. Fla. Bd. of Trs., No. 17-11888 (11th Cir. July 24, 2017) (order denying transfer).

- Also on May 22, 2017, Ms. Zainulabeddin appealed the Florida federal district court's costs award to the Eleventh Circuit, where it was assigned docket number 17-12376.

On June 20, 2017, Ms. Zainulabeddin's Federal Circuit appeal was denied for lack of subject matter jurisdiction. Zainulabeddin v. Univ. of S. Fla. Bd. of Trs., No. 2017-2083 (Fed. Cir. June 20, 2017). The Federal Circuit declined to transfer any portion of Ms. Zainulabeddin's appeal to the Eleventh Circuit since she already had appeals pending in that court. Id. Ms. Zainulabeddin unsuccessfully sought reconsideration of the Federal Circuit's denial, which was construed as a motion for panel rehearing.[5] Zainulabeddin v. Univ. of S. Fla. Bd. of Trs., No. 2017-2083 (Fed. Cir. July 27, 2017). Her petition to the United States Supreme Court for a writ of certiorari was similarly unsuccessful. Zainulabeddin v. Univ. of S. Fla. Bd. of Trs., 138 S. Ct. 569 (2017) (mem.).

On July 10, 2017, the Eleventh Circuit consolidated Ms. Zainulabeddin's three appeals and set a new briefing schedule. Ms. Zainulabeddin filed her opening brief on August 28, 2017, and an amended opening brief on October 31, 2017. USF filed its response brief on November 30, 2017. Ms. Zainulabeddin filed her reply brief on March 1, 2018. Various motions, and the merits of the appeal itself, remain pending at the Eleventh Circuit.

In the meantime, Ms. Zainulabeddin filed suit in this court on December 13, 2017. In the "Statement of Facts" section of her complaint, Ms. Zainulabeddin focuses on the events surrounding her August 29, 2014 OCR complaint. She generally alleges that the OCR failed to conduct a proper investigation, including a failure to investigate the entirety of her allegations, which led to the erroneous conclusion of insufficient evidence of discrimination. She asserts counts for a regulatory taking, the commission of various torts, and violation of the Administrative Procedure Act. Concurrent with the complaint, Ms. Zainulabeddin filed an application to proceed in forma pauperis and a Notice of Directly Related Case pursuant to Rule 40.2 of the Rules of the United States Court of Federal Claims ("RCFC"). In the Notice of Directly Related Case, Ms. Zainulabeddin states that the instant case "is factually related" to her Florida federal district court case, her Federal Circuit appeal, and her Eleventh Circuit appeals. Specifically, she avers that the instant case "involves the related facts and contract" that were the subject of her OCR complaint. Defendant subsequently moved to dismiss the complaint as asserting claims outside of this court's jurisdiction. Prior to responding to defendant's motion to

---

[5] Ms. Zainulabeddin repeatedly asserts that the Federal Circuit's July 27, 2017 rehearing denial was a "ruling on the merits of the case, but denying jurisdiction." E.g., Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") 26. Her assertion reflects a misunderstanding of the Federal Circuit's decision. Although the Federal Circuit recognized that her construed motion for panel rehearing would be considered as having been timely filed, that portion of the ruling was merely procedural and did not concern the merits of Ms. Zainulabeddin's appeal. In other words, the Federal Circuit did not rule on the merits of her appeal. Indeed, the Federal Circuit specified that, because it had no jurisdiction to consider her appeal, all pending motions with respect to the merits of her appeal were denied as moot. See infra Section II.B (discussing jurisdiction).

dismiss, Ms. Zainulabeddin filed a response to the Notice of Assignment to the undersigned, and subsequently filed a motion for extension of time to respond to defendant's motion, in which she (1) reiterated that the instant case "involve[s] common issues of fact and law" as her Eleventh Circuit appeals, (2) repeated the allegations set forth in her complaint, and (3) alleged that her transfer medical school, Atlantic, engaged in certain improper behavior. Defendant's motion to dismiss is now fully briefed, and the court deems oral argument unnecessary.[6]

## II. LEGAL STANDARDS

### A. Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from its burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

---

[6] The court denied Ms. Zainulabeddin's motion for leave to file a sur-reply with respect to defendant's motion to dismiss. Ms. Zainulabeddin has appealed that denial to the Federal Circuit, where it was assigned docket number 2018-2033. It is well settled that an appeal typically divests the trial court of jurisdiction and confers it on the appellate court. Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (per curiam). However, with limited exceptions not relevant here, the Federal Circuit only has jurisdiction "of an appeal from a final decision" of this court. 28 U.S.C. § 1295(a)(3) (emphasis added). Final decisions are generally "judgments that terminate an action." Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106 (2009) (internal quotation marks omitted). Final decisions also include certain collateral rulings, id., but no such collateral rulings are presently at issue. The order from which Ms. Zainulabeddin appeals did not terminate the action and is not among the class of collateral rulings that can be appealed. An appeal from an unappealable order does not divest the trial court of jurisdiction; such an appeal is a nullity and has no effect—it is "as if no notice of appeal were filed at all." Griggs, 459 U.S. at 58, 61.

In short, the Federal Circuit lacks jurisdiction to consider Ms. Zainulabeddin's appeal from the court's order denying leave to file a sur-reply because that appeal is premature. Therefore, this court retains its power over the instant case notwithstanding the appeal.

### B. Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Subject matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case." United States v. Cotton, 535 U.S. 625, 630 (2002), quoted in Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868). Therefore, subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case." Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015). Either party, or the court sua sponte, may challenge the court's subject matter jurisdiction at any time. Arbaugh, 546 U.S. at 506.

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "may not be inferred, but must be unequivocally expressed." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012); White Mountain, 537 U.S. at 472. However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 298 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

### C. RCFC 12(b)(1)

In determining whether subject matter jurisdiction exists, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). With respect to a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, that the court possesses subject matter jurisdiction. Id. The court is not limited to the pleadings in considering subject matter jurisdiction. Banks, 741 F.3d at 1277; Pucciariello v. United States, 116 Fed. Cl. 390, 400 (2014). If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### D. RCFC 12(b)(6)

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief. Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."). To survive an RCFC 12(b)(6) motion to dismiss, a plaintiff must include in her complaint "enough facts to state a claim to relief that is plausible on its face" sufficient for the defendant to have "fair notice" of the claim and the "grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted). In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on such a motion, the court must "accept as true all of the factual allegations contained in the complaint" and any attachments thereto. Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56); accord RCFC 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (applying RCFC 10(c) and emphasizing that "a court 'must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'" (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007))).

## III. ANALYSIS

Under a liberal construction of Ms. Zainulabeddin's pro se complaint, Ms. Zainulabeddin alleges tortious and criminal conduct; civil rights, due process, and equal protection violations; a regulatory takings claim; violation of the Administrative Procedure Act; violation of Section 504; and a breach-of-contract claim. She also petitions for a writ of mandamus and collaterally attacks the judgment of the Florida federal district court. Because Ms. Zainulabeddin's claims are outside the scope of this court's jurisdiction, the complaint must be dismissed.

### A. The United States Is the Only Proper Defendant in the Court of Federal Claims

The crux of Ms. Zainulabeddin's complaint is that Morsani discriminated against her. Ms. Zainulabeddin also refers, in subsequent filings, to improper actions taken by Atlantic. However, in the Court of Federal Claims, "the only proper defendant . . . is the United States, not its officers, nor any other individual." Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003); accord RCFC 10(a). Because "the United States itself" is the only proper defendant in the Court of Federal Claims, this court lacks jurisdiction "over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees." Anderson v. United States, 117 Fed. Cl. 330, 331 (2014). Similarly, the Court of Federal Claims lacks jurisdiction "over suits against private parties." Edelmann v. United States, 76 Fed. Cl. 376, 380 (2007). In other words, "if the relief sought [in the Court of Federal Claims] is against other than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court." Sherwood, 312 U.S. at 584. In the instant case, the parties agree that USF, of which

Morsani is a part, is an instrumentality of the state of Florida. Further, Atlantic is, as alleged by Ms. Zainulabeddin, a private entity. Accordingly, to the extent that Ms. Zainulabeddin complains of improper conduct by her medical schools and their employees, this court lacks jurisdiction over those claims, and they must be dismissed.

### B. The Court of Federal Claims Lacks Jurisdiction Over Ms. Zainulabeddin's Torts and Civil Rights Claims

To the extent that Ms. Zainulabeddin seeks relief in this court based on alleged tortious conduct and civil rights violations, the Court of Federal Claims lacks jurisdiction to entertain those claims.

First, the Court of Federal Claims is not a federal district court. Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 563 (2017) (distinguishing between the "Court of Federal Claims" and "federal district courts").

Second, only federal district courts possess jurisdiction to entertain claims alleging civil rights violations. See, e.g., Jones v. United States, 104 Fed. Cl. 92, 98 (2012) (explaining that the Court of Federal Claims has no jurisdiction over claims based on, among other causes of action, alleged "violations of . . . civil rights"); Marlin v. United States, 63 Fed. Cl. 475, 476 (2005) (explaining that Bivens claims and claims alleging violations of 42 U.S.C. §§ 1981, 1983, and 1985 must be heard in federal district courts).

Third, this court lacks jurisdiction to entertain claims sounding in tort. 28 U.S.C. § 1491(a)(1); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008). Indeed, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680, jurisdiction over tort claims against the United States lies exclusively in federal district courts. U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013). Claims of fraud, conspiracy, harassment, breach of fiduciary duty, and negligence sound in tort. See, e.g., Lawrence Battelle, Inc. v. United States, 117 Fed. Cl. 579, 585 (2014) (fraud and negligence); Sellers v. United States, 110 Fed. Cl. 62, 68 (2013) (negligence); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) (harassment, fraud, and breach of fiduciary duty); Phang v. United States, 87 Fed. Cl. 321, 325 (2009) (fraud); Gant v. United States, 63 Fed. Cl. 311, 316 (2004) (conspiracy, fraud, and negligence).

In short, the court must dismiss any tort or civil rights claims that Ms. Zainulabeddin seeks to advance as beyond its jurisdiction.

### C. The Court of Federal Claims Lacks Jurisdiction Over Criminal Matters

Next, Ms. Zainulabeddin vaguely alleges that criminal activity may have been perpetrated by USF representatives during the OCR investigation. However, it is well established that the Court of Federal Claims "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code." Joshua v. United States, 17 F.3d 378, 379 (Fed.

Cir. 1994) (internal quotation marks omitted) (summarily affirming a Court of Federal Claims dismissal order); see also Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (collecting cases). Therefore, to the extent that Ms. Zainulabeddin seeks redress for criminal violations, such claims must be dismissed as beyond the jurisdiction of this court.

### D. The Court of Federal Claims Lacks Jurisdiction Over Ms. Zainulabeddin's Constitutional Claims

#### 1. Due Process and Equal Protection

Ms. Zainulabeddin's complaint also contains allegations of equal protection and due process violations. However, the Due Process Clauses of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment do not mandate the payment of money damages. LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995). As stated above, the Court of Federal Claims lacks jurisdiction over claims that are "not tied to money-mandating sources of law." Ivaldy v. United States, 655 F. App'x 813, 815 (Fed. Cir. 2016) (unpublished decision).

#### 2. Regulatory Taking

Ms. Zainulabeddin further alleges, in Count II of her complaint, that the OCR's dismissal of some of her allegations as untimely effected a regulatory taking. The Fifth Amendment to the United States Constitution prohibits the federal government from taking private property for public use without paying just compensation. "It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source [of law] for purposes of Tucker Act jurisdiction" in the Court of Federal Claims. Jan's Helicopter Serv., Inc. v. FAA, 525 F.3d 1299, 1309 (Fed. Cir. 2008). However, a plaintiff must still allege a nonfrivolous takings claim—whether physical or regulatory—to invoke this court's Tucker Act jurisdiction. Cf. Oneida Indian Nation of N.Y. v. Oneida Cty., 414 U.S. 661, 666-67 (1974).

To prevail on a takings claim, a plaintiff must identify a valid property interest under the Fifth Amendment, Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1027 (1992), and show a government action that amounted to a compensable taking of that property interest, Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123-124 (1978). See also Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013) (describing the "two-part test" that courts use in takings cases). The federal government "can be held liable for a Fifth Amendment taking only if there is physical invasion of or physical damage to a claimant's property by the United States or its authorized agents, or if its own regulatory activity is so extensive or intrusive as to amount to a taking." May v. United States, 80 Fed. Cl. 442, 445 (2008) (internal quotation marks and alterations omitted).

Assuming, without deciding, that Ms. Zainulabeddin's interest in her discrimination claims constitutes a cognizable property interest, she has failed to allege any "extensive or intrusive" regulatory activity on the part of the OCR sufficient to invoke this court's jurisdiction. Rather, her contention that the OCR declined to pursue an investigation into certain allegations,

and failed to adequately pursue others, amounts to an assertion that the OCR's actions were not sufficiently diligent. In other words, to the extent that conducting an investigation can be considered a regulatory activity, Ms. Zainulabeddin's regulatory takings claim boils down to an argument that the OCR should have been more extensive and intrusive. Such a regulatory takings allegation is so "devoid of merit as not to involve a federal controversy," Oneida, 414 U.S. at 666, and thus fails to invoke the jurisdiction of this court.

Even if the court possessed jurisdiction to consider Ms. Zainulabeddin's regulatory takings claim, she has failed to establish a plausible claim for relief. In asserting a takings claim, a plaintiff must concede the legitimacy of the government action that effected the taking. See Reg'l Rail Reorg. Act Cases, 419 U.S. 102, 126-27 & n.16 (1974) ("[T]he Government action must be authorized. 'The taking of private property by an officer of the United States for public use, without being authorized, expressly or by necessary implication, to do some act of Congress, is not the act of the government,' and hence recovery is not available in the [Court of Federal Claims]." (quoting Hooe v. United States, 218 U.S. 322, 336 (1910))); Rith Energy, Inc. v. United States, 270 F.3d 1347, 1352 (Fed. Cir. 2001) ("[I]n a takings case we assume that the underlying governmental action was lawful, and we decide only whether the governmental action in question constituted a taking for which compensation must be paid."). Ms. Zainulabeddin does not make such a concession, but rather alleges that the OCR acted improperly. Therefore, the court could not grant her relief. See, e.g., Davis v. United States, 123 Fed. Cl. 235, 243 (2015) (differentiating between "an uncompensated taking and an unlawful government action," explaining that each gives rise to a separate cause of action, and finding that the plaintiff failed to state a plausible takings claim because he had alleged improper government conduct (internal quotation marks omitted)), aff'd per curiam, 642 F. App'x 982 (Fed. Cir. 2016) (unpublished decision).

### 3. Summary

The Court of Federal Claims lacks jurisdiction to entertain Ms. Zainulabeddin's constitutional claims. In addition, to the extent that jurisdiction in this court is proper with respect to her regulatory takings claim, Ms. Zainulabeddin has failed to state a claim upon which this court can grant relief. Accordingly, her constitutional claims must be dismissed.

### E. The Court of Federal Claims Lacks Jurisdiction Over Ms. Zainulabeddin's Other Statutory Claims

#### 1. Administrative Procedure Act

Next, in Count IV of her complaint, Ms. Zainulabeddin alleges that the manner in which the OCR conducted its investigation violated the Administrative Procedure Act.[7] Although her reference to the Administrative Procedure Act is not specific, Ms. Zainulabeddin alleges that the OCR investigator ignored "substantial evidence provided to her to reasonably conclude that USF" had acted improperly. Compl. ¶ 62; accord Pl.'s Resp. 2. Thus, Ms. Zainulabeddin appears to be asking this court to "hold unlawful and set aside agency [i.e., OCR] action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012).

However, the Administrative Procedure Act is not a money-mandating source of law. Faison v. United States, 102 Fed. Cl. 637, 641 (2012). Indeed, the statutory provision discussing the right to judicial review for violations of the Administrative Procedure Act contemplates an action in federal district court for "relief other than money damages." 5 U.S.C. § 702 (emphasis added); accord Faison, 102 Fed. Cl. at 641. The Administrative Procedure Act "only provides the framework for determining when a court may review an agency's determination," and thus is "insufficient to invoke the jurisdiction of the Court of Federal Claims" with respect to a claim for money damages. Ross v. United States, 122 Fed. Cl. 343, 348 (2015) (internal quotation marks omitted).

#### 2. Section 504

In addition to asserting violations of the Administrative Procedure Act, Ms. Zainulabeddin contends that (1) she was subjected to discrimination during medical school in contravention of Section 504 and (2) the OCR ran afoul of Section 504 by the manner in which it conducted its investigation.

Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive Agency." 29 U.S.C. § 794(a). There is no dispute that the United States Department of Education, of which the OCR is a part, is a federal agency. See, e.g., 5 U.S.C. § 105. There is also no dispute that USF is subject to Section 504 for two reasons. First, USF is a "college, university, or other postsecondary institution, or a public system of higher education," 29 U.S.C. § 794(b)(2)(A), qualifying it as a "program or activity" for Section 504 purposes. Second, USF students,

---

[7] Ms. Zainulabeddin also alleges that Morsani violated the Administrative Procedure Act by failing to have properly trained its employees to accommodate students with disabilities. However, since such a claim is lodged against a state actor, rather than the federal government, it is beyond the jurisdiction of this court. See supra Section III.A.

including those at Morsani, are eligible to receive federal financial aid. In fact, Ms. Zainulabeddin specifies that she has been required to rely on student loans to fund her education.

Although Ms. Zainulabeddin alleges violation of a federal statute, Section 504 does not mandate the payment of money damages. Golding v. United States, 48 Fed. Cl. 697, 723 (2001). Accordingly, claims alleging Section 504 violations are beyond the jurisdiction of the Court of Federal Claims. Such claims must be brought in federal district court. Id.

### 3. Summary

In sum, Ms. Zainulabeddin's statutory claims do not rely upon money-mandating sources of law. In any event, jurisdiction over her statutory claims has been specifically committed to the federal district courts. Accordingly, the Court of Federal Claims lacks jurisdiction over her statutory claims, and they must be dismissed.

### F. The Court of Federal Claims Cannot Issue the Requested Writ of Mandamus

Ms. Zainulabeddin next appears to request a writ of mandamus from this court directing the OCR to reopen its investigation and make certain findings. However, jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" is committed to the federal district courts. 28 U.S.C. § 1361; accord Ross, 122 Fed. Cl. at 348. In other words, the Court of Federal Claims has no authority to issue the writ of mandamus that Ms. Zainulabeddin appears to seek. Therefore, any such claim must be dismissed as beyond the jurisdiction of this court.

### G. The Court of Federal Claims Lacks Jurisdiction Over Ms. Zainulabeddin's Breach-of-Contract Claim

Ms. Zainulabeddin also appears to allege that she had an "expressed and implied contract [with the OCR] to investigate her allegations," Resp. Notice Directly Related Case 2, that arose when the OCR stated "that her complaint was accepted for investigation," id. at 5. She also alleges that she has "a contractual relationship with the defendant, based on the promissory notes signed and approved by the [United States Department of Education], to fund her medical education." Mot. Ext. Time File Resp. 5; accord Pl.'s Resp. 1, 27.

In contract disputes, the "money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract."[8] Holmes, 657 F.3d at 1314. Therefore, a "non-frivolous allegation of a contract with the government" is generally sufficient to invoke the court's Tucker Act jurisdiction. Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (emphasis added). The court's

---

[8] The mere existence of a contract, however, does not automatically give rise to the court's Tucker Act jurisdiction because not all contracts contemplate money damages. See Holmes v. United States, 657 F.3d 1303, 1314 (Fed. Cir. 2011) (describing contracts that do not fall within the reach of the Tucker Act).

jurisdiction over federal government contracts extends to claims involving implied-in-fact contracts. Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996). An implied-in-fact contract results from a "meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." Id. at 424 (internal quotation marks omitted). The requirements for an implied-in-fact contract with the government "are the same as for an express contract":

    (1) mutuality of intent,

    (2) consideration,

    (3) an unambiguous offer and acceptance, and

    (4) "actual authority" on the part of the government's representative to bind the government in contract.

Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003). The only difference between express contracts and implied-in-fact contracts is the nature of the evidence required. Id.

Even when a plaintiff properly alleges a contract with the federal government, the Court of Federal Claims cannot exercise its jurisdiction unless the plaintiff also satisfies the pleading requirements set forth in RCFC 9(k). See, e.g., Baha v. United States, 123 Fed. Cl. 1, 5 n.4 (2015) ("Satisfaction of RCFC 9(k) is a jurisdictional requirement."); see also Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. 760, 766 (2014) ("If a plaintiff fails to comply with RCFC 9(k) and to allege sufficient facts to show that it had a contract with the United States, the court cannot exercise jurisdiction over the claim."); Kissi v. United States, 102 Fed. Cl. 31, 35 (2011) (finding no jurisdiction based on the plaintiff's failure to show an existing contract and failure to "adequately plead a contract claim under RCFC 9(k)"). RCFC 9(k) requires a party, "[i]n pleading a claim founded on a contract," to "identify the substantive provisions of the contract . . . on which the party relies." A plaintiff who attaches a copy of the contract to the complaint and "identif[ies] the provisions and terms of the contract that have been breached" satisfies her burden under RCFC 9(k) because doing so allows the court to "render a decision . . . know[ing] the relevant terms of the contract." Garreaux v. United States, 77 Fed. Cl. 726, 730 (2007).

Ms. Zainulabeddin attempts to allege the necessary elements—mutuality of intent, consideration, offer and acceptance, and actual authority—of a contract with the federal government:

- mutuality of intent: Ms. Zainulabeddin filed her second OCR complaint, and the OCR scheduled an initial phone call as part of its intake process;

- consideration: the OCR offered "early case resolution";

- offer and acceptance: OCR's September 25, 2014 letter agreeing to investigate; and

- actual authority: "governmental officer actions that further imply his authority to bind to the Federal Government."

Pl.'s Resp. 32. Therefore, for the sake of argument, the court assumes (without deciding) that Ms. Zainulabeddin has alleged the elements of a contract with the federal government. However, that is not the end of the inquiry. Ms. Zainulabeddin has failed to satisfy the RCFC 9(k) pleading requirements because she has not identified any substantive provisions of the alleged contract that have been breached. Compliance with RCFC 9(k) is necessary for the court to adjudicate a contract claim because the court cannot do so without knowing the relevant terms of the contract. The materials that Ms. Zainulabeddin attached to her filings generally describe the OCR's findings—i.e., agency action, not contract terms. Further, Ms. Zainulabeddin has failed to demonstrate how her student loans mandated the OCR to conduct an investigation.

Accordingly, to the extent that Ms. Zainulabeddin has sufficiently alleged the existence of a contract with the federal government, her failure to comply with RCFC 9(k) defeats that portion of her complaint.

Even if Ms. Zainulabeddin's breach-of-contract claim was within the jurisdiction of this court, she has failed to state a claim upon which this court can grant relief. It is simply not plausible that the OCR investigator had the authority to bind the federal government to an obligation that would mandate the payment of money damages for its breach. In other words, because an OCR investigation is not a contract, Ms. Zainulabeddin cannot rely upon the investigation to support a breach-of-contract claim. Further, although Ms. Zainulabeddin's student loans are indeed contracts, there are no allegations that any terms of the promissory notes she signed have been breached. To prove a breach of contract, a plaintiff must establish "(1) a valid contract between the parties; (2) an obligation or duty arising from that contract; (3) a breach of that duty; and (4) damages caused by the breach." Century Expl. New Orleans, LLC v. United States, 110 Fed. Cl. 148, 163 (2013). Because Ms. Zainulabeddin fails to allege any facts with respect to the breach of any duties owed to her in conjunction with her student loans, she cannot prevail on a breach-of-contact claim. Even if there had been a breach of her student loan contracts, such a breach would be relevant with respect to the loans themselves, and would not concern the actions of the OCR.[9]

---

[9] Prior to filing suit in this court, Ms. Zainulabeddin requested a refund of her Morsani tuition, with interest, for the two years of medical school that she failed, but she did not seek debt discharge relief in her complaint. Nevertheless, in response to defendant's motion to dismiss, she (for reasons not entirely clear) describes her efforts to have her student loan debt discharged. See Pl.'s Resp. 23, 39, 46. Ms. Zainulabeddin cannot amend her complaint in a response memorandum. RQ Squared LLC v. United States, 119 Fed. Cl. 751, 759 (2015). Moreover, amendment to add such a claim would be futile. This court lacks jurisdiction over student loan debt cancellation claims. Gonzales & Gonzales Bond & Ins. Agency, Inc. v. Dep't of Homeland

In sum, Ms. Zainulabeddin has failed to carry her burden of demonstrating that this court has jurisdiction over her breach-of-contract claim. Further, even if the court had jurisdiction to consider her breach-of-contract claim, she has failed to state a claim upon which this court can grant relief. Accordingly, her breach-of-contract claim must be dismissed.

## H. The Court of Federal Claims Cannot Entertain Collateral Attacks Against the Decisions of Other Courts

In addition to alleging myriad claims against the United States, Ms. Zainulabeddin appears to collaterally attack the decisions of the Florida federal district court. However, the Tucker Act does not provide the Court of Federal Claims with jurisdiction to entertain collateral attacks on decisions of federal district courts. See 28 U.S.C. § 1491(a); Shinnecock Indian Nation v. United States, 782 F.3d 1345, 1352 (Fed. Cir. 2015) ("Binding precedent establishes that the Court of Federal Claims has no jurisdiction to review the merits of a decision rendered by a federal district court."); Vereda, Ltda. v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he Court of Federal Claims cannot entertain a taking claim that requires the court to scrutinize the actions of another tribunal." (internal quotation marks omitted)).

Ms. Zainulabeddin's recourse concerning prior adverse decisions is "the statutorily defined appellate process." Shinnecock Indian Nation, 782 F.3d at 1353 (citing 28 U.S.C. § 1291). In other words, judicial decisions can only be reviewed by the appropriate appellate court. Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218-19 (1995). With respect to Ms. Zainulabeddin, the appropriate appellate court to review the decisions of the Florida federal district court is the Eleventh Circuit, where plaintiff currently has three consolidated appeals pending. See infra Section III.J.

## I. The Court of Federal Claims Lacks Authority to Grant Injunctive Relief

Finally, in addition to monetary relief, Ms. Zainulabeddin seeks certain injunctive relief—reinstatement to Morsani, refund of two years of tuition paid, correction of her academic records, and correction of her consumer credit reports. However, it is well settled the Court of Federal Claims lacks the authority to grant such equitable relief. See Bowen v. Massachusetts, 487 U.S. 879, 905 (1988) (holding that the Court of Federal Claims lacks the "general equitable powers of a district court to grant prospective relief"). Rather, this court can only award equitable relief that is "incidental to and collateral to a claim for money damages." Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 858-59 (Fed. Cir. 1992); see also Simanonok v. Simanonok, 918 F.2d 947, 952 (Fed. Cir. 1990) (stating that claims for injunctive relief are "not cognizable in a ... Tucker Act case, absent a concurrent colorable claim for monetary recovery"). Here, as explained above, Ms. Zainulabeddin does not have a colorable claim for money damages. Thus, the equitable relief that she seeks does not arise as "incidental and collateral to" a monetary judgment. Accordingly, the court has no authority to award equitable relief in this case.

---

Sec., 490 F.3d 940, 945 (Fed. Cir. 2007) (explaining that a "debt cancellation claim is not one for monetary relief" and thus outside the jurisdiction of the Court of Federal Claims).

### J. Ms. Zainulabeddin's Claims Were Pending in Another Court When the Instant Complaint Was Filed

In any event, Ms. Zainulabeddin's suit is barred in this court by the application of 28 U.S.C. § 1500. Under 28 U.S.C. § 1500, the Court of Federal Claims does not possess jurisdiction to hear claims that are pending in another court. See also United States v. Tohono O'Odham Nation, 563 U.S. 307, 311 (2011); Brandt v. United States, 710 F.3d 1369, 1374 (Fed. Cir. 2013); Res. Invs., Inc. v. United States, 114 Fed. Cl. 639, 647 (2014). Whether this statutory bar to jurisdiction applies is measured at the time the complaint is filed in the Court of Federal Claims. Brandt, 710 F.3d at 1379-80; Res. Invs., 114 Fed. Cl. at 647; Vero Tech. Support, Inc. v. United States, 94 Fed. Cl. 784, 790 (2010).

> To determine whether [28 U.S.C.] § 1500 applies, a court must make two inquiries: (1) whether there is an earlier-filed "suit or process" pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are "for or in respect to" the same claim(s) asserted in the later-filed Court of Federal Claims action. If the answer to either of these questions is negative, then the Court of Federal Claims retains jurisdiction.

Brandt, 710 F.3d at 1374. Two actions are "for or in respect to the same claim . . . if they are based on substantially the same operative facts, regardless of the relief sought in each suit." Tohono, 563 U.S. at 317.

Whether 28 U.S.C. § 1500 operates to bar this court from exercising jurisdiction in this case was not raised by the parties, but the court has the responsibility to examine all pertinent issues relevant to subject matter jurisdiction because "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); accord Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."). In other words, a court may examine the issue of subject matter jurisdiction "on its own initiative" at any point in a case. Arbaugh, 546 U.S. at 506; see also Jeun v. United States, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases).

First, Ms. Zainulabeddin had "an earlier-filed 'suit or process' pending in another court," Brandt, 710 F.3d at 1374, when her complaint was filed in this court on December 13, 2017: her consolidated appeals before the Eleventh Circuit. See Brandt, 710 F.3d at 1378 ("[A] claim is pending when a notice of appeal is filed and docketed . . . ."); see also id. at 1379-80 ("[O]nce a claim is dismissed or denied, it is no longer 'pending' for § 1500 purposes until a . . . notice of appeal is filed."). Even if the appeal had been subsequently terminated, it would be of no moment because "[t]he question of whether another claim is 'pending' for purposes of § 1500 is determined <u>at the time at which the suit in the Court of Federal Claims is filed</u>," not at some later point. Loveladies Harbor, 27 F.3d at 1548 (emphasis added).

-18-

Second, Ms. Zainulabeddin's appeals that were pending at the Eleventh Circuit when she filed the complaint in the instant case involve the same claims that she asserts in this court. Indeed, Ms. Zainulabeddin herself stated that the instant case involves the same facts as those in her Eleventh Circuit appeals, and included a copy of her "Notice of Directly Related Case" filed at this court in one of her filings at the Eleventh Circuit. She also stated that the Eleventh Circuit appeals involve a "similar common nucleus of operating facts" as the instant case. Compl. xiii; accord Resp. Notice Assignment 2 ("The cases pending at the [Eleventh Circuit] involve common issues of fact and law . . . ."). Moreover, even when the relief sought is different, it is sufficient for § 1500 purposes if the two cases are "based on substantially the same operative facts." Tohono, 563 U.S. at 317.

In short, Ms. Zainulabeddin had an earlier-filed suit pending in the Eleventh Circuit when she filed her complaint in this court, and the same operative facts underlie both actions. Therefore, even if it possessed subject matter jurisdiction over Ms. Zainulabeddin's claims, this court would be divested of that jurisdiction pursuant to 28 U.S.C. § 1500.

## IV. APPLICATION TO PROCEED IN FORMA PAUPERIS

To proceed with a civil action in this court, a plaintiff must either pay $400 in fees—a $350 filing fee plus a $50 administrative fee—or request authorization to proceed without payment of fees by submitting a signed application to proceed in forma pauperis.[10] See 28 U.S.C. §§ 1915, 1926; RCFC 77(c); see also Waltner v. United States, 93 Fed. Cl. 139, 141 n.2 (2010) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and nonprisoners alike). Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees, and (3) states the nature of the action and their belief that they are entitled to redress. 28 U.S.C. § 1915(a)(1). Evaluation of a plaintiff's ability to pay is "left to the discretion of the presiding judge, based on the information submitted by the plaintiff." Alston-Bullock v. United States, 122 Fed. Cl. 38, 45 (2015).

As noted above, Ms. Zainulabeddin filed, concurrent with her complaint, an application to proceed in forma pauperis. Ms. Zainulabeddin has fulfilled all three requirements of § 1915(a)(1), and the court is satisfied that she is unable to pay the filing fee otherwise required by RCFC 77.1(c). Therefore, the court grants Ms. Zainulabeddin's application and waives her filing fee.

---

[10] While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of Title 28 of the United States Code, the court has jurisdiction to adjudicate applications to proceed in forma pauperis. See 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be a "court of the United States" for purposes of 28 U.S.C. § 1915).

## V. CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive, without merit, or unnecessary for resolving the issues currently before the court.

Ms. Zainulabeddin experienced significant challenges while a Morsani student. She has spent years seeking internal, administrative, and judicial redress, and continues to seek judicial relief in multiple fora. Ms. Zainulabeddin has asked both this court and the Eleventh Circuit to consolidate her cases "to [a] single judge as deemed appropriate" to "conserve judicial resources [and] promote efficient and expedit[ious] administration of justice." Notice Directly Related Case 3. However, although Ms. Zainulabeddin qualifies to proceed in forma pauperis, this court lacks jurisdiction to entertain her complaint. To the extent that jurisdiction is proper in the Court of Federal Claims, Ms. Zainulabeddin has failed to state a claim upon which this court can grant relief. On the other hand, dismissal of the instant case will effectively grant Ms. Zainulabeddin's request to consolidate her judicial efforts in one forum—the Eleventh Circuit.

Therefore, the court **GRANTS** Ms. Zainulabeddin's application to proceed in forma pauperis and **GRANTS** defendant's motion to dismiss the complaint for lack of subject matter jurisdiction. Ms. Zainulabeddin's complaint is **DISMISSED WITHOUT PREJUDICE**. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge